**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| **MARKEL INTERNATIONAL** | § | |
| **INSURANCE COMPANY LIMITED** | § | |
| **and J.H. BLADES & CO., INC.,** | § | |
| Plaintiffs, | § | **Civil Action No. 7:22-cv-99** |
| | § | |
| **v.** | § | |
| | § | |
| **TRIANGLE ENGINEERING LLC;** | § | |
| **BRIAN BELL; HALLMARK** | § | |
| **FINANCIAL SERVICES, INC.,** | § | |
| **AMERITRUST GROUP, INC. AND** | § | |
| **AMERITRUST INSURANCE** | § | |
| **CORPORATION,** | § | |
| **Defendants** | § | |

**NOTICE OF REMOVAL OF DEFENDANT CENTURY SURETY COMPANY**
**(MISNAMED OR MISIDENTIFIED AS AMERITRUST GROUP, INC. AND**
**AMERITRUST INSURANCE CORPORATION)**

**TO THE HONORABLE COURT:**

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Century Surety Company, misnamed or misidentified as Ameritrust Group, Inc. and Ameritrust Insurance Corporation, ("Century" or "Defendant") files this, its Notice of Removal, and respectfully shows that diversity subject-matter jurisdiction exists and removal is timely.

**I.      Introduction and Background Facts**

1.      This is ostensibly a declaratory judgment regarding the extent of an indemnity obligation in the April 29, 2017  Master Service/Sales Agreement ("MSA") between Colgate Operating, LLC and Triangle Engineering, LLC ("Triangle") as the obligation pertains to a personal injury lawsuit filed in Reeves County, Texas: *Jeromy Miller and Anai Miller v. Colgate Energy, LLC, Colgate Energy GP, LLC, Colgate Energy Partners, LLC, Colgate Energy*

*Partners I, LLC, Colgate Energy Partners II, LLC, Colgate Operating, LLC, Triangle Engineering, LLC, Brian Bell, LongString Pipe & Supply and Rudy Montoya*, Cause No. 20-04-23492-CVR ("the Underlying Lawsuit").

2.      The Underlying Lawsuit alleged that, on February 29, 2020, Jeromy Miller was performing work for Black Star Energy Services ("Black Star") delivering pipe racks to Colgate IWOJIMA 26-14.  Triangle was acting as the "well supervisor (consultant)" through the MSA with Colgate.  Triangle's independent contractor Brian Bell ("Bell") was assisting Mr. Miller in unloading the pipe racks when the pipe racks fell from a flatbed trailer and severely injured Mr. Miller.  Mr. Miller and his wife (the "Miller Plaintiffs") sued various parties involved in loading and unloading the pipe racks, including Triangle, Bell, and several Colgate entities, alleging negligence and negligent activity.  Facing a potential recovery of $100,000,000, all of the defendants in the Underlying Lawsuit have agreed to a settlement with the Miller Plaintiffs.

3.      Under the MSA, Triangle and Colgate had a mutual indemnity obligation. Because Mr. Miller was an employee of Colgate's vendor, Colgate was obligated to indemnify Triangle for claims alleged in the Underlying Lawsuit.

4.      Colgate had two insurance policies that potentially covered Colgate's liability in the Underlying Lawsuit.  Markel International Insurance Company Limited ("Markel") issued to Colgate Energy, LLC a commercial general liability insurance policy in effect on the date of the underlying incident with policy limits of $1,000,000 per occurrence ("the Markel primary policy").  Markel additionally issued an excess policy to Colgate Energy, LLC, also in effect on the date of the underlying incident, with $75,000,000 per occurrence and $75,000,000 aggregate limits.  Collectively, these are referred to as the "Markel Policies."

5.      The Amended Petition alleges that J.H. Blades & Co., Inc. ("J.H. Blades"), the agent for the Markel Policies, issued the policies to Colgate, but also alleges that the Markel

Policies are insured by Markel. Additionally, the Markel Policies contain the following language:

## INSURERS/ASSURERS HEREUNDER

It is expressly understood and agreed by the Insured/Assured and the Producing Agent/Broker by accepting this Policy, *that J. H. Blades & Co., Inc., is not an Insurer hereunder and that J. H. Blades & Co., Inc., shall not be any way or to any extent liable for any loss or claim whatsoever*, but that the Insurers/Assurers hereunder are those individual Insurance Companies and/or Underwriters, whose names appear on the reverse side hereof. It is further understood and agreed that J. H. Blades & Co., Inc. *acts as agent for the Insurers/Assurers not the Insured/Assured*.

(emphasis added).

6.      Triangle also had its own insurance policies potentially covering the loss. Hallmark National Insurance Company ("Hallmark") issued to Triangle a commercial general liability insurance policy with policy limits of $1,000,000 per occurrence. Further, Century issued to Triangle a Commercial Excess Liability Coverage Policy in effect on the date of the underlying incident with policy limits of $5,000,000 per occurrence and $5,000,000 aggregate.

7.      Markel takes the position it is obligated to pay for Colgate's contractual indemnity owed to Triangle up to the $5,000,000 as allegedly set forth under the MSA. In contrast, Century's position is that the MSA, in conjunction with the Markel Policies, create an obligation for Colgate to indemnify Triangle up to the full $76,000,000 limits of Markel's primary and excess policies. Century's position is based off upon applicable Texas law, including the Fifth Circuit's recent opinion in *Cimarex Energy Co. v. CP Well Testing*, L.L.C., 26 F.4th 683 (5th Cir. 2022).

8.      To determine its obligations on behalf of Colgate under the MSA in the Underlying Lawsuit, Markel—along with J.H. Blades—bring this lawsuit in state court against

Triangle, Bell, Hallmark and Century (incorrectly named).[1]   J.H. Blades, however, has no interest at all in the indemnity obligations set out in the MSA.  The Petition alleges that J.H. Blades issued the policies–policies insured by Markel–and collected premium.  There is no allegation that J.H. Blades would be responsible in any way to pay any indemnity obligation owed by the insured Colgate under the MSA no matter what the court determines.  In fact, the Markel policies specifically disclaim such a result.  J.H. Blades has been added specifically to destroy diversity and so that Markel can avoid the application of the *Cimarex Energy* case likely to dictate the party's indemnity obligation if the case is decided in federal court.

9.      As J.H. Blades is not a "real party at interest" under Rule 17 of the Federal Rules of Civil Procedure, J.H. Blades should be disregarded for purposes of determining diversity.  To the extent a fraudulent joinder analysis is applied, J.H. Blades has no reasonable basis to recover against any defendant and therefore this matter is properly brought in federal court.

## II.      Removal is Timely

10.      On March 30, 2022, Plaintiffs Markel and J.H. Blades filed their First Amended Petition for Declaratory Relief in state court in the case styled *Markel International Insurance Company Limited and JH Blades & Co., Inc. v. Triangle Engineering, LLC; Brian Bell; Hallmark Financial Services, Inc., Ameritrust Group, Inc. and Ameritrust Insurance Corporation*, Cause No. CV58404 in the 385th Judicial District Court of Midland County, Texas ("the state declaratory judgment action").[2]  *See* Index, Tab 2.

11.      The state declaratory judgment action does not name Colgate or the Millers as parties and adds Plaintiff J.H. Blades, Defendant Bell and Defendant Hallmark to the action.

---

[1] Century also instituted an Original Complaint for Declaratory Judgment in the United States District Court for the Western District of Texas, Austin Division under Civil Action No. 1:22-cv-00285.

[2] Although an Original Petition was filed on March 8, 2022 in the state declaratory judgment action, none of the parties appear to have been served with same.

12.     Defendant Century Surety Company, misnamed or misidentified as Ameritrust Group, Inc. and Ameritrust Insurance Corporation, was served April 4, 2022.  *See* Index, Tab 5.

13.     Defendant Century files this Notice of Removal within the thirty-day time period required by 28 U.S.C. § 1446(b).  Accordingly, this Notice of Removal is timely.

## III.     Diversity of Citizenship

14.     Removal is proper under 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties.

15.     Plaintiff Markel is a foreign corporation organized under the laws of the United Kingdom, licensed to do business and doing business in the State of Texas.

16.     Although Plaintiff J.H. Blades is a Texas corporation with its headquarters in Houston, Texas, J.H. Blades is not a real party in interest, which lacks standing; consequently, the citizenship of J.H. Blades is not considered for the purpose of removal.

17.     Defendant Triangle Engineering, LLC ("Triangle") is an Oklahoma limited liability company with its principal place of business in Oklahoma.  Diversity of citizenship for purposes of limited liability companies is determined by the citizenship of its members.  Upon information and belief, all of Triangle's members, including the managing member, Bryson Davis, are citizens of the State of Oklahoma.

18.     Upon information and belief, Defendant Brian Bell, is a nonresident of Texas, who maintains his principal residence in Oklahoma.

19.     Defendant Hallmark Financial Services, Inc. is a Texas corporation with its headquarters in Texas.

20.     Century Surety Company, misnamed or misidentified as Ameritrust Group, Inc. and Ameristruct Insurance Corporation, is a corporation domiciled in Ohio, with its principal

place of business in Michigan.  Century is an insurer licensed to transact business in the State of Texas.

21.     Because this action is wholly between citizens of different states, and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, this Court has original jurisdiction over this cause pursuant to 28 U.S.C. § 1332.

## IV.     Arguments & Authorities Supporting Removal

### A.  J.H. Blades is Not a Real Party In Interest

22.     Only real parties in interest are proper parties.  Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest").  Rule 17(a) provides the appropriate standard to determine whether a plaintiff's citizenship should be considered for the purpose of establishing diversity.  *See UICI v. Gray*, No. 3:01-cv-0821, 2002 WL 356753, at *5 (N.D. Tex. Mar. 1, 2020) (citing 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3641 (2d ed. 1985) ("[I]n cases in which the plaintiff attempts to defeat jurisdiction by the joinder of a non-diverse plaintiff, the courts will allow the transaction only if that person is deemed a real party in interest under Rule 17(a)")).  "If the 'nondiverse' plaintiff is not a real party in interest … its presence in the case may be ignored in determining jurisdiction."  *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 403-04 (8th Cir. 1977) (citing *Nunn v. Feltinton*, 294 F.2d 450, 453 (5th Cir. 1961) ("joinder of formal or unnecessary parties cannot prevent the removal of an action to a federal court");  *see also, Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1123 (5th Cir. 1987) ("[t]he district court … held that [the non-diverse party] was not a real party in interest … and thus removal was proper.  We agree.").

23.     In *Farrell Constr. Co. v. Jefferson Parish, La.*, 896 F.2d 136 (5th Cir. 1990), a general contractor sued Jefferson Parish on behalf of itself and its subcontractors in federal court,

based on diversity jurisdiction, and the Fifth Circuit applied the "real party in interest" test. The diversity-defeating subcontractor was not joined as a party to the suit. The district court, deeming the subcontractor an indispensable party, dismissed the case for want of jurisdiction. The Fifth Circuit reversed, holding the subcontractor was not a "real party in interest" within the meaning of Rule 17(a). *Id*. at 141. The Fifth Circuit noted that the "real party in interest is a person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery." *Id*. at 140. "Conversely," the court explained, "a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it." *Id.*

24.     Here, as discussed in more detail below, J.H. Blades is not a real party in interest as it has no substantive right to enforce under the MSA or the Markel Policies issued to the Colgate entities. J.H. Blades, along with Markel, are alleging a declaratory judgment as to the indemnity provisions in the MSA in light of the Texas Oil Anti-Indemnity Act. Under the Texas Declaratory Judgment Act, "[a] person *interested under* a deed, will, written contract . . . *whose rights, status or other legal relations are affected by* a statute, municipal ordinance, [or] contract . . . may have determined any question or construction or validity" *See* Tex. Civ. Prac. & Rem. Code 37.004 (emphasis). Therefore, based on the claims alleged under Chapter 37, to be a real party at interest, J.H. Blades needs to have *rights, status or legal relations* that are *affected* by the MSA upon which the claims are being made.

25.     J.H. Blades has no such rights. The petition does not allege that J.H. Blades will be responsible for paying any amount owed on behalf of Colgate in the Underlying Lawsuit. In fact, the J.H. Blades specifically disclaims owing any amount under the Markel policies. No determination by state court regarding the MSA or the Markel Policies will have any effect on

J.H. Blades' rights, so it is not a real party at interest within the meaning of Rule 17.  Therefore, J.H. Blades' citizenship may be disregarded for the purposes of diversity jurisdiction.

### B.  J.H. Blades Lacks Standing to Sue on the MSA or the Markel Policies

26.      J.H. Blades further lacks standing to bring its declaratory judgment claim regarding either MSA or the Markel Policies.  Standing requires a real controversy between the parties to be determined with the judicial declaration sought.  *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).  While standing can generally be determined by the petition, a court may go beyond the pleadings and consider evidence under certain circumstances.  *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)); *Sarah v. Primarily Primates, Inc.*, 255 S.W.3d 132, 142-43 (Tex.App.—San Antonio 2008, pet. denied) (in determining jurisdictional issue, court considered contract entered into evidence at hearing on motion to dismiss).

27.      J.H. Blades is not a party to the MSA at issue in the dispute.  Moreover, J.H. Blades is not a party to the Markel Policies at issue in this dispute.  *See Am. Heritage, Inc. v. Nev. Gold & Casino, Inc.*, 259 S.W.3d 816, 820 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004)).  One who is not a party to an agreement generally has no interest in its terms.  *Wells v. Dotson*, 261 S.W.3d 275, 284 (Tex. App.—Tyler 2008, no pet).

28.      To have standing to sue under either the MSA or the Markel Policies, J.H. Blades would need to demonstrate that it is an intended third-party beneficiary to either contract.  *See Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007).  The intent to confer a direct benefit upon a third party "must be clearly and fully spelled out or enforcement by the third party must be denied."  *Id.* (quoting *MCI Telecommc'ns Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d

647, 651 (Tex. 1999)).  Incidental benefits that may flow from a contract to a third party are insufficient to confer the right to enforce the contract.  *Id.*

29.     Here, J.H. Blades lacks standing as it is not a party to the MSA nor is a party to the Markel Policies.  While Markel, as the carrier providing insurance for Colgate, may have the right to seek a declaration under the MSA as it relates to its potential obligation to fund amounts in settlement of the Underlying Lawsuit, J.H. Blades has no such interest.  J.H. Blades will never have any rights or obligations under the MSA or the Markel Policies.  Moreover, any benefits that J.H. Blades received as Markel's agent in issuing the contract were incidental and not intended to create rights or obligations under the Markel Policies.  By the Markel Policies own terms "***J. H. Blades & Co., Inc., shall not be any way or to any extent liable for any loss or claim whatsoever***."  (Emphasis added).  J.H. Blades is not a party to either the MSA or the Markel Policies, is not a beneficiary to those agreements, and has no rights or obligation under either document.  As such, J.H. Blades has no viable cause of action in this matter.  *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

### C.  Under a Fraudulent Joinder Standard, J.H. Blades Has No Viable Claim

30.     To the extent that fraudulent/improper joinder is the proper standard, J.H. Blades has no reasonable possibility of having any right or obligation determined under the MSA.  *See e.g., In re Benjamin Moore & Co*., 318 F.3d 626, 630–31 (5th Cir.2002) (assuming, without deciding, that fraudulent joinder of plaintiffs is a viable theory); *Clear Channel Commc'ns, Inc. v. Citigroup Glob. Markets, Inc*., 541 F. Supp. 2d 874, 877–78 (W.D. Tex. 2008) (applying fraudulent joinder in the context of a plaintiff's claim); *Miller v. Giesecke & Devrient*, No. 3:06-cv-1466, 3:06-cv-2386-D, 2007 WL 518557, at *2 (N.D. Tex. Feb. 20, 2007) ("The fraudulent joinder doctrine can be applied to the alleged fraudulent joinder of a plaintiff.").

31.     Improper joinder can be established in two ways:  (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  *Smallwood v. Ill. Cent. R. R. Co.,* 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby,* 326 F.3d 644, 646-47 (5th Cir. 2003).  Under the later method, the court determines whether there is *"any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder.  This *possibility, however, must be reasonable,* not merely theoretical." *Travis,* 326 F.3d at 648 (emphasis added).

32.     The Western District in *Clear Channel Communications* noted, however, that when applying the fraudulent joinder analysis to a non-diverse plaintiff, the focus of the analysis is not whether there is any possibility of recovery against one particular defendant, but whether the plaintiff in question "has a *reasonable possibility* of recovering at all."  *Clear Channel Commc'ns*, 541 F. Supp. 2d at 877–78.

33.     While J.H. Blades is not seeking a *recovery,* J.H. Blades is not entitled to the *relief* sought in the First Amended Petition.  As discussed extensively in both the sections on real party at interest and standing, J.H. Blades alleges only a declaratory judgment action as to the MSA and Markel Policies at issue but has no rights or obligations under those documents.  J.H. Blades is not "[a] person *interested under* a deed, will, written contract" within the meaning of Section 37.003.  Moreover, J.H. Blades is not a party whose "*rights, status or other legal relations are affected by* a statute, municipal ordinance, [or] contract."  As the prior sections have established, J.H. Blades would not have standing to enforce these agreements as strangers to both contracts.  Tellingly, ***if Markel were not a co-plaintiff to the action, nothing in the First Amended Petition would suggest that J.H. Blades would have any right to bring the action as the sole plaintiff***.  Moreover, the express language in the Markel Policies disclaims any rights or

obligation under the policies.  As J.H. Blades has no "reasonable possibility" of any relief in the action, J.H. Blades should not be considered for diversity purposes.

## V.      Venue is Proper

34.      Venue in this district is proper under 28 U.S.C. §§ 124(d)(4) and 1446(a) because the Western District of Texas encompasses Reeves County, Texas where the Underlying Lawsuit is pending, and Midland County, Texas, where the state declaratory judgment action was filed. As such, it is "the district and division embracing the place where such action is pending."

## VI.     Amount in Controversy

35.      The Millers sought in excess of $1,000,000 for the claimed personal injury damages in the Underlying Lawsuit.  The dispute filed by Markel centers upon whether its policy provides $5,000,000 in coverage instead of $11,000,000.   Therefore, because the amount in controversy exceeds the $75,000 threshold required to invoke this Court's jurisdiction, removal is proper. 28 U.S.C. § 1332(a); *see St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (noting the district court examines the complaint to determine whether it is facially apparent that the claim exceeds the jurisdictional minimum); *see also KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277 (1936) (holding allegation in pleading is sufficient to establish amount in controversy).

## VII.    The Removal is Procedurally Correct

36.      Pursuant to 28 U.S.C. §1446(a), all pleadings, process, orders, and all other filings available in the state declaratory judgment action are attached to this Notice.  Attached hereto is the Index of Matter Being Filed.  A copy of the Midland County Clerk's Docket Sheet and file for this case is attached as Tab 1 in the Index.  The Index further includes true copies of pleadings.

37.     Pursuant to 28 U.S.C. §1446(d), promptly after Defendant files this Notice, written notice of the filing will be given to Plaintiff, the adverse party.

38.     Pursuant to 28 U.S.C. §1446(d), promptly after Defendant files this Notice of Removal, a true and correct copy will be filed with the Clerk of the Midland County District Court, the state court from which this action was removed.

39.     Century is authorized by Defendants Triangle, Hallmark, and Bell to represent to the Court that Triangle, Hallmark, and Bell have consented to this removal.

40.     Defendants Ameritrust Group, Inc. and Ameritrust Insurance Corporation are not proper parties to this suit as the policy here issued from Century Surety Company.  Therefore, their consent is not necessary for removal.  Nonetheless, the undersigned counsel represents Ameritrust Group, Inc. and Ameritrust Insurance Corporation and advises, while reserving any rights both have, they consent to this removal.

## VIII.   Relief Requested

41.     This notice was filed timely.   The amount in controversy exceeds $75,000. Complete diversity of citizenship exists as to the real party in interest and properly joined Plaintiff Markel and the correctly named Defendants.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.   Accordingly, the action is properly removed pursuant to 28 U.S.C. § 1441.

42.     Defendant Century Surety Company, misnamed or misidentified as Ameritrust Group, Inc. and Ameritrust Insurance Corporation, respectfully requests that the United States District Court for the Western District of Texas, Austin Division, accept and file the Notice of Removal, assume jurisdiction of this lawsuit, and issue all such further orders and processes as may be necessary.

Respectfully submitted,


By:    */s/ Robert J. Witmeyer*
      **ROBERT J. WITMEYER**
      Texas State Bar No. 24091174
      Robert.Witmeyer@cooperscully.com

      **COOPER & SCULLY, P.C.**
      900 Jackson Street, Suite 100
      Dallas, Texas 75202
      Telephone:   (214) 712-9500
      Telecopy:   (214) 712-9540

      **ATTORNEYS FOR DEFENDANT, CENTURY SURETY COMPANY (MISNAMED OR MISIDENTIFIED AS AMERITRUST GROUP, INC. AND AMERITRUST INSURANCE CORPORATION)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2022, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court for the Western District of Texas, using the electronic filing system of the court.

*/s/ Robert J. Witmeyer*
**Robert J. Witmeyer**